FREMONT HOTEL AND CASINO, Appellant, v. EVELYN ESPOSITO, NEVADA EMPLOYMENT SECURITY DEPARTMENT, STATE OF NEVADA, BOARD OF REVIEW, Respondents.

No. 18375

August 25, 1988 760 P.2d 122

---

*Smith & Kotchka, Scott Scherer,* and *David A. Hintzman,* Las Vegas, for Appellant.

*Jon L. Sasser,* Carson City, *Justin Clouser,* Las Vegas, and *Crowell, Susich, Owen & Tackes,* Carson City, for Respondents.

## OPINION

*Per Curiam:*

Evelyn Esposito, respondent, was employed as a cocktail waitress by the Fremont Hotel and Casino (Fremont) in Las Vegas, Nevada, on February 17, 1977. On August 2, 1985, she was terminated for alleged "misconduct," i.e. refusing to consent to an immediate drug and alcohol examination.

Ms. Esposito applied for unemployment benefits, and the Nevada Employment Security Department representative, finding no misconduct on her part, concluded that she was eligible. Fremont appealed that determination, and after an evidentiary hearing the appeals referee affirmed the decision of the department.

Fremont appealed from the referee's decision to the Board of Review. The Board of Review concluded that Ms. Esposito had no compelling need to refuse Fremont's request that she be tested for drugs and alcohol. The Board of Review reversed the referee, and concluded that Ms. Esposito was ineligible for unemployment benefits.

Ms. Esposito petitioned the district court for judicial review of the board's decision, and the district court concluded that the board's decision, finding "misconduct," was arbitrary and capricious because the decision was not supported by substantial evidence.

Ms. Esposito testified that on August 1, 1985, the day before her termination, she had accidentally cut her fingers, and as a result was in pain and sick to her stomach. As a result, she maintains that she was unable to sleep from the time of the accident until she was expected to report for work at 6:00 p.m. on August 2, 1985. Ms. Esposito stated that at 1:00 p.m. on August 2, she called her bar manager at the Fremont to report that she was too ill to work as a result of this accident and the prescribed sleep medication which she had recently taken. She was told by the bar manager that she was needed and should report to work, and she complied.

Ms. Esposito's actions were observed during the first 35 minutes of her shift. She was described by Fremont personnel as groggy, disoriented, light-headed, and glassy-eyed. Ms. Esposito, herself, claims that she passed out. Her condition was observed by a security guard, the shift supervisor, the casino supervisor, and the assistant general manager of the Fremont.

When confronted by the assistant general manager, Mr. Collins, Ms. Esposito explained that she had injured her hand and had taken several prescribed medications. Mr. Collins then explained to her that she was suspected of being under the influence, and he asked her three or four times during their conversation to go to the clinic to be tested and clear up these suspicions. Each time she refused. He explained that if the medications were prescribed and taken in the prescribed manner, there would be no problem. Refusing this offer to allay suspicions, Ms. Esposito was discharged. She presented herself to be tested 45 minutes later, however, but the test was then refused. Upon this record the district court reversed the Board of Review.

In McCracken v. Fancy, 98 Nev. 30, 31, 639 P.2d 552, 553 (1982), we stated:

> In reviewing an administrative board's decision, this court, like the district court, is limited to the record below and to the determination of whether the board acted arbitrarily or capriciously. The question is whether the board's decision was based on substantial evidence; neither this court, nor the district court, may substitute its judgment for the administrator's determination.

(Citations omitted.) In petitions for judicial review, "the finding of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." NRS 612.530(4).

NRS 612.385 provides:

> A person is ineligible for benefits for the week in which he has filed a claim for benefits, *if he was discharged* from his

last or next to last employment *for misconduct connected with his work,* and remains ineligible until he earns remuneration in covered employment equal to or exceeding his weekly benefit amount in each of not more than 15 weeks thereafter as determined by the executive director in each case according to the seriousness of the misconduct.

(Emphasis added.)

Misconduct may be established by "a deliberate violation or disregard on the part of the employee of standards of behavior which his employer has the right to expect." Barnum v. Williams, 84 Nev. 37, 41, 436 P.2d 219, 222 (1968). Misconduct is generally understood as "any improper or wrong conduct." Lellis v. Archie, 89 Nev. 550, 553, 516 P.2d 469, 470-471 (1973) (quoting Boynton Cab Co. v. Neubeck, 296 N.W. 636, 639 (Wis. 1941)).

Ms. Esposito focuses her argument upon what she claims is a lack of wrongfulness in her actions, and the district court was of the same opinion. However, both this court and the district court are restricted in the review of the administrative agency proceedings. The district court does not hold a trial *de novo.*

> When analyzing the concept of misconduct, the trier of fact must consider the legal definition, *Barnum,* in context with the factual circumstances surrounding the conduct at issue. Misconduct then becomes a mixed question of law and fact. Jones v. Rosner, 102 Nev. 215, 719 P.2d 805 (1986). Findings of misconduct must be given deference similar to findings of fact, when supported by substantial evidence in the lower court. *Id.*

*Garman,* 102 Nev. at 565, 729 P.2d 1336.

Thus, the fundamental issue raised in this appeal is whether the district court erred in failing to defer to the board's finding of misconduct or, stated otherwise, whether the board's decision was supported by substantial evidence.

Recently, in Texas Emp. Com'n v. Hughes Drill. Fluids, 746 S.W.2d 796 (Tex.Ct.App. 1988), an employee was discharged for refusing to submit a urine sample for drug screening purposes as required by company policy. The court held, among other things, that the denial of unemployment benefits because of the misconduct-related discharge was supported by substantial evidence. The record did not reflect that the employee ever abused drugs. *Hughes Drill. Fluids,* 746 S.W.2d at 801 n.11. In fact, this case suggests that the testing was simply random screening, and

the employee refused to be tested even though he was on notice of the company policy.

Misconduct is a "deliberate violation or disregard on the part of the employee of standards of behavior which his employer has the right to expect." *Barnum,* 84 Nev. at 41, 436 P.2d at 222. The parties agree that a union-employer contract exists allowing the employer to subject employees to drug and alcohol examinations. Ms. Esposito does not contend that she had no notice of this contract provision. In fact, she was reminded of the provision when asked to be tested. She said, "I'm still not gonna take the test."

The simple facts are that Ms. Esposito was asked to take an immediate drug and alcohol test after her employer became reasonably suspicious that she was under the influence. She refused and was terminated for this refusal in accordance with the provision within the union-employer contract. The employer had the right to expect her to consent to this test. Thus, her refusal was wrongful. The facts support the board's determination that she was terminated for misconduct. Therefore, we reverse the order of the district court.